UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUPERIOR SPORTS, LLC
an Arkansas Limited Liability Company,

                Plaintiff,

vs.

SEROS ENTERPRISES, LLC,
a North Carolina Limited Liability Company,

                Defendant.

_____/

Case No. 2:26-cv-11510-MFL-APP

Hon. Matthew F. Leitman

Gary K. August (P48730)
Michael C. Lewis (P59139)
AUGUST LAW, PLLC
Attorneys for Plaintiff
363 W. Big Beaver Road, Suite 410
Troy, MI 48084
(248) 833-6225
gaugust@august-law.com
mlewis@august-law.com

_____/

FIRST AMENDED COMPLAINT

Superior Sports, LLC ("Plaintiff"), by and through its attorneys, August Law, PLLC for

its Complaint against Defendant SEROS Enterprises, LLC ("Defendant"), and pursuant to the

Court's Order to Show Cause or File an Amended Complaint [ECF No. 3] states as follows:

PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is an Arkansas limited liability company with its principal place of

business at 1102 Hope Avenue, Suite E, Jonesboro, AK  72401.  Plaintiff's members are Mitchell

August, a citizen of the State of Arizona, and Corey Barker, a citizen of the State of Arizona.

Plaintiff does business in the State of Michigan.

1

2. Defendant is a North Carolina limited liability company, with its principal office and resident agent's address being 270 Car Farm Road, Suite 200, Lincolnton, NC 28092-7105. Pursuant to the 2026 Annual Report filed by Defendant (Exhibit 5), its member is Jonah Baize with an address listed as 270 Car Farm Road, Suite 200, Lincolnton, NC 28092-7105. Based on this publicly available information, Johan Baize is a citizen of the state of North Carolina.

3. Defendant's resident agent is Jonah Baize, whose address in Exhibit 5 is 270 Car Farm Road, Suite 200, Lincolnton, NC 28092-7105.

4. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy is in excess of $75,000. Plaintiff and its members are citizens of Arkansas and Arizona, respectively, and Defendant and its member are both citizens of North Carolina. Thus, complete diversity of citizenship exists between the parties.

5. Personal jurisdiction of Defendant is proper in Michigan as Defendant regularly conducts business in the State of Michigan. See Exhibit 1. Further Defendant signed a certain Mutual Non-Disclosure Agreement, discussed further below, stating that Michigan law would apply to any dispute it has with Plaintiff.

6. Venue is proper in this Court, in the Southern Division, as Defendant conducts business in the County of Oakland as evidenced by Exhibit 1.

FACTS

7. Plaintiff is a sports agency who represents basketball players in college, in the NBA, and overseas.

8. Plaintiff, on behalf of its athlete clients, negotiates with NCAA schools and collectives to obtain Name Image and Likeness ("NIL") agreements for its clients. In doing so,

2

Plaintiff negotiates with NCAA schools and collectives throughout the country, including in the State of Michigan.

9.      Likewise, Defendant is also a sports agency which on behalf of its athlete clients, negotiates with NCAA schools and collectives to obtain NIL agreements for its clients.  In doing so, Plaintiff negotiates with NCAA schools and collectives throughout the country, including the State of Michigan as seen by the internet marketing posts attached hereto as Exhibit 1 with respect to Western Michigan University and Oakland University.

10.      On February 13, 2026, Plaintiff and Defendant entered into a Mutual Non-Disclosure Agreement attached hereto as Exhibit 2 (the "Agreement").

11.      At the time the Plaintiff and Defendant entered into the Agreement they were exploring potential collaboration regarding the recruiting, placement, and representation of basketball athletes.

12.      Defendant was seeking to buy the Plaintiff and employ the Plaintiff's members as employees of Defendant.

13.      In connection with their negotiations, the Defendant required Plaintiff to disclose to Defendant certain confidential, proprietary, and strategic information, and the Defendant agreed in the Agreement to protect such information and refrain from misusing that information.

14.      Section 3 of the Agreement reads as follows:

**3. Non-Solicitation of Current Clients**

- Not to solicit, contract, represent, or attempt to represent current clients of the other party who are under active representation agreements, without prior written consent;
- Not to interfere with, circumvent, or undermine existing client relationships of the other Party;
- Not to use Confidential Information to directly or indirectly compete with, or diminish the business of, the other Party with respect to current clients.

3

For purposes of this Agreement, "current clients" means any athlete or player who has executed a written representation agreement with a Party that is currently in effect.   This non-solicitation provision does NOT apply to prospects, pipeline players, or athletes who have not yet signed representation agreements with either Party.

15.     Per the first sentence of the Agreement, the Effective Date of the Agreement is February 13, 2026.

16.     At the time the Agreement was entered into between Plaintiff and Defendant, Tylen Riley was a client of Plaintiff under a March 19, 2025, contract, as amended on August 4, 2025.

17.     The term of Tylen Riley's contract with Plaintiff ran through the expiration of Tylen Riley's college eligibility or the contract's termination.

18.     Tylen Riley was included on Plaintiff's client list shared with Defendant, and a copy of Tylen Riley's contract with Plaintiff was provided to Defendant after the Effective Date of February 13, 2026, as part of Defendant's due diligence in its negotiations to purchase Plaintiff.

19.     Tylen Riley was a current client of Plaintiff who was under an active representation agreement on February 13, 2026, when the Agreement was signed.

20.     Negotiations between Plaintiff and Defendant concluded when Defendant would not make a reasonable offer which adequately valued Plaintiff's business and clients.

21.     During those discussions Plaintiff advised Defendant that the value of the Tylen Riley contract alone was more than what Defendant was offering for its purchase of Plaintiff.

22.     On February 24, 2026, eleven days after Plaintiff and Defendant entered into the Agreement, Tylen Riley terminated his contract with Plaintiff with 30 days' notice.

4

23. Upon information and belief Tylen Riley then signed a retention agreement with Defendant as Defendant later publicly announced Tylen Riley as a client of Defendant in marketing materials and announcing Tylen Riley's signing with the University of Cincinnati. See Exhibit 3.

<u>COUNT I – BREACH OF CONTRACT</u>

24. Plaintiff incorporates the allegations of the preceding paragraphs as though fully set forth herein.

25. The Agreement was entered into between Plaintiff and Defendant as a result of offer, acceptance and consideration.

26. Plaintiff has fully performed its duties and obligations under the Agreement through the time of Defendant's breach of the Agreement and thereafter.

27. Defendant breached Section 3 of the Agreement by contracting with and representing Tylen Riley within one (1) year of the effective date of the Agreement (February 13, 2026) as Defendant was precluded from contracting with or representing Tylen Riley within one (1) year of the Agreement's effective date for any reason.

28. Plaintiff did not consent in writing for Defendant to represent Tylen Riley as required by the Agreement if Defendant were to engage in such representation.

29. Since Plaintiff lost out on the ability to represent Tylen Riley and his NIL for the 2026-2027 collegiate year, it has suffered damages.

30. Section 8 of the Agreement states that in the event of a breach of Section 3 of the Agreement that the breaching party would owe the other party three times (3x) the gross revenue or compensation earned by the breaching party from such violation, recognizing that actual damages would be difficult to ascertain.

31.     Section 9 also gives Plaintiff the right to audit the books and records of the breaching party solely as necessary to verify compliance with Section 3 and Section 4 of the Agreement.

32.     Consistent with Section 9 of the Agreement, through Exhibit 4 hereto, Plaintiff's attorney sent Defendant a written demand to audit the books and records of Defendant related to both Tylen Riley and any other clients of Plaintiff (as of February 13, 2026, the effective date), including, but not limited to:

1.     All communications and records of communications (emails, texts, letters, phone records) between Seros and any of Superior's clients (including, but

2.     All agreements between Seros and any of Superior's clients (including, but not limited to, Tylen Riley);

3.     All communications between Seros and any college made in an effort to negotiate an NIL deal for any of Superior's clients (including, but not limited to Tylen Riley), and this includes all communications (emails, texts, letters, phone records) with the University of Cincinnati with respect to Tylen Riley.

4.     Record of all compensation paid by Seros, contractually to be paid by Seros, received by Seros, or contractually to be received by Seros with respect in any way to Superior's clients, including, but not limited to, Tylen Riley.

33.     Defendant further breached the Agreement by failing to comply with Section 9 and producing the requested records to Plaintiff to verify Defendant's compliance with Section 3 and Section 4 of the Agreement.

34.     As a direct and proximate result of Defendant's breaches, Plaintiff has been damaged.

35.     Section 10 of the Agreement states that, "[i]n the event of litigation or arbitration arising from this Agreement, the prevailing Party shall be entitled to recover reasonable attorneys fees and costs."

6

36.     Section 11 of the Agreement states the Agreement "shall be governed by and construed in accordance with the laws of the State of Michigan without regard to conflict of law principles."

37.     Because Defendant has concealed the terms of its representation of Tylen Riley from Plaintiff, Plaintiff does not know the full extent of its damages.  However, the amount of its damages well exceeds $75,000 exclusive of costs, fees and interest.

WHEREFORE, Plaintiff seeks judgment in its favor against Defendant from this Count in the amount of its damages incurred, and to be incurred in the future, such amount being three times (3x) the gross revenue or compensation earned by the Defendant from its breach of the agreement, an amount in excess of $75,000, exclusive of costs, interest and fees; plus interest, costs and attorney fees allowed by Michigan law and Section 10 of the Agreement.

## COUNT II -- FRAUD

38.     Plaintiff incorporates the allegations of the preceding paragraphs as though fully set forth herein.

39.     Defendant approached Plaintiff with the idea of Defendant purchasing Plaintiff and Defendant employing the members of Plaintiff.

40.     Defendant then wrongfully induced Plaintiff to provide Defendant a list of all Plaintiff's clients along with copies of representative contracts, including that of Tylen Riley.

41.     Defendant then made offers to purchase Plaintiff that were not realistic in any financial way so long as Plaintiff kept its clients, including Tylen Riley.

42.     Defendant signed the Agreement in order to obtain the Plaintiff's confidential information when Defendant had no intention of complying with the Agreement.

7

43. Upon negotiations failing, Tylen Riley then gave notice he was terminating his representation agreement with Plaintiff.

44. Defendant ultimately entered into a NIL representation agreement with Tylen Riley.

45. Upon information and belief, at the time Defendant approached Plaintiff to purchase its business and hire its members as employees, it had no intention of doing so.

46. Upon information and belief, Defendant only approached Plaintiff regarding the purchase of its business and the hiring of its members as a ruse to gain access to Plaintiff's confidential information so it could raid Plaintiff's clients and steal its business – which Defendant ultimately did with respect to Tylen Riley.

47. Defendant's representations that it was exploring potential collaboration with Plaintiff regarding the recruiting, placement, and representation of basketball athletes, and that it would honor the Agreement, were misrepresentations which were false at the time they were made.

48. At the time Defendant made the misrepresentations in the prior paragraph, it had no intention of collaborating with Plaintiff regarding the recruiting, placement, and representation of basketball athletes, nor that it would honor its obligations in the Agreement.

49. Such misrepresentations were knowingly and intentionally false when they were made.

50. The misrepresentations were material.

51. In reliance upon the misrepresentations, Plaintiff gave Defendant access to its client lists and certain client contracts, including Tylen Riley's contract.

52.     As a result of such reliance, Plaintiff was damaged when Defendant did not negotiate in good faith regarding the collaborating with Plaintiff regarding the recruiting, placement, and representation of basketball athletes or purchasing Plaintiff and employing Plaintiff's members, and instead Defendant raided Plaintiff's business and stole Tylen Riley as a client for its sole benefit.

53.     Plaintiff not only lost out on all NIL revenue it would have generated from Tylen Riley's signing for the 2026-2027 season, but it also incurred costs and expenses in attracting and retaining Tylen Riley as a client and its attempt to get Tylen Riley back as a client after his notice of termination.

WHEREFORE, Plaintiff seeks judgment in its favor against Defendant from this Count in the amount of its damages incurred, and to be incurred in the future, such amount being the gross revenue or compensation earned by the Defendant from its representation of Tylen Riley and the expenses Plaintiff incurred in attracting and retaining Tylen Riley as a client and its attempt to get Tylen Riley back as a client after his notice of termination, an amount in excess of $75,000, exclusive of costs, interest and fees; plus interest, costs and attorney fees allowed by Michigan law.

<u>COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT</u>

54.     Plaintiff incorporates the allegations of the preceding paragraphs as though fully set forth herein.

55.     Plaintiff and Tylen Riley had a valid, enforceable contract.

56.     Tylen Riley terminated his contract with Plaintiff.

57.     Upon information and belief, Defendant intentionally and improperly instigated, caused, or induced Tylen Riley to terminate his contract with Plaintiff.

9

58.     The actions by Defendant were intentional and improper as set forth in this Complaint.

59.     Defendant's actions were without any legal justification.

WHEREFORE, Plaintiff seeks judgment in its favor against Defendant from this Count in the amount of its damages incurred, and to be incurred in the future, such amount being the gross revenue or compensation earned by the Defendant from its representation of Tylen Riley and the expenses Plaintiff incurred in attracting and retaining Tylen Riley as a client and its attempt to get Tylen Riley back as a client after his notice of termination, an amount in excess of $75,000, exclusive of costs, interest and fees; plus interest, costs and attorney fees allowed by Michigan law.

By /s/ *Gary K. August*
Gary K. August (P48730)
Michael C. Lewis (P59139)
AUGUST LAW, PLLC
Attorneys for Plaintiff
363 W. Big Beaver Road, #410
Troy, MI  48084

Dated:  May 7, 2026

# EXHIBIT 1

 serospartners







# EXHIBIT 2

# MUTUAL NON-DISCLOSURE AGREEMENT

This Mutual Non-Disclosure Agreement (the "Agreement") is entered into as of
2/13/2026
_____the "Effective Date") by and between:

Superior Sports LLC ("Superior"), with its principal place of business at 1102 Hope Ave, Suite E, Jonesboro AR 72401 and

SEROS Enterprises, LLC ("SEROS"), with its principal place of business at 270 Car Farm Road, Lincolnton, NC 28092,

(each, a "Party" and collectively, the "Parties").

## 1. Purpose

The Parties intend to explore potential collaboration regarding the recruiting, placement, and representation of basketball athletes. In connection therewith, each Party may disclose to the other certain confidential, proprietary, and strategic information. The Parties agree to protect such information and refrain from misuse.

## 2. Definition of Confidential Information

"Confidential Information" means any non-public information disclosed by one Party to the other, whether oral, written, or electronic, including but not limited to:

- Internal stakeholder materials and presentations;
- Basketball statistical decks;
- Internal marketing and onboarding materials;
- Client information, prospective client information, and business strategies;
- Client contracts and NIL agreements (which may only be shared internally within each Party organization and shall not be disclosed to any third parties without prior written consent).

Confidential Information does not include information that:

a) is publicly available through no fault of the receiving Party;

b) was lawfully known prior to disclosure; or

c) is rightfully obtained from a third party without restriction.

## 3. Non-Solicitation of Current Clients

For a period of one (1) year from the Effective Date, each Party agrees:

- Not to solicit, contact, represent, or attempt to represent any current clients of the other Party who are under active representation agreements, without prior written consent;

- Not to interfere with, circumvent, or undermine existing client relationships of the other Party;
- Not to use any Confidential Information to directly or indirectly compete with, or diminish the business of, the other Party with respect to current clients.

For purposes of this Agreement, "current clients" means any athlete or player who has executed a written representation agreement with a Party that is currently in effect. This non-solicitation provision does NOT apply to prospects, pipeline players, or athletes who have not yet signed representation agreements with either Party.

### 4. Use of Confidential Information

The receiving Party shall:

- Use Confidential Information solely for the Purpose stated in Section 1;
- Not copy, reproduce, or distribute such information except as reasonably necessary;
- Restrict disclosure to employees, officers, or representatives with a strict need to know, provided they are bound by obligations no less restrictive than those in this Agreement;
- Not disclose client contracts or NIL agreements to any third parties under any circumstances without the prior written consent of the disclosing Party.

### 5. Meetings and Collaboration

The Parties may include each other in select meetings, recruiting discussions, and related communications. Both Parties may ask and answer questions for purposes of evaluating potential collaboration. Such participation does not create an agency, partnership, or joint venture unless otherwise agreed in writing.

### 6. Term & Survival

This Agreement shall remain in effect for one (1) year from the Effective Date. Either Party may terminate upon thirty (30) days written notice. Notwithstanding termination, Sections 2 (Confidential Information), 3 (Non-Solicitation of Current Clients), 4 (Use of Confidential Information), 7 (Remedies), and 8 (Liquidated Damages) shall survive termination for the full one (1) year period following the Effective Date.

### 7. Remedies

The Parties acknowledge that breach of this Agreement may cause irreparable harm. Accordingly, the non-breaching Party shall be entitled to injunctive relief in addition to any other remedies at law or equity.

### 8. Liquidated Damages

The Parties agree that in the event of a material breach of Section 3 (Non-Solicitation of Current Clients) or Section 4 (Use of Confidential Information), the breaching Party shall pay the non-breaching Party liquidated damages equal to three (3) times the gross revenue

or compensation earned by the breaching Party from such violation, recognizing that actual damages would be difficult to ascertain. The Parties agree this is a fair and reasonable estimate of anticipated harm, not a penalty.

## 9. Audit Rights

The non-breaching Party shall have the right, upon reasonable notice, to audit the books and records of the breaching Party solely as necessary to verify compliance with Section 3 and Section 4.

## 10. Attorneys Fees

In the event of litigation or arbitration arising from this Agreement, the prevailing Party shall be entitled to recover reasonable attorneys fees and costs.

## 11. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan without regard to conflict of law principles.

## 12. Entire Agreement

This Agreement constitutes the entire understanding between the Parties concerning the subject matter hereof and supersedes all prior discussions. No amendment shall be effective unless in writing and signed by both Parties.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the Effective Date.

Superior Sports LLC

By: _____

Name: _____
Mitchell August

Title: _____
Co-Founder & COO

Date: _____
2/13/2026

SEROS Enterprises, LLC

By: _____

Name: _____
Christian Dawkins

Title: _____
CEO

Date: _____
2/13/2026

SEROS Enterprises, LLC

By: _____

Name: _____
Hailee Vaughn-Dawkins

Title: _____
Chief of Staff

Date: _____
2/13/2026

www.superior-sports.com    (248) 930-7988

# EXHIBIT 3



dushawn_london and 2 others    **Follow**

Tulsa guard Tylen Riley is entering the transfer portal per his representatives **@SerosPartners** ...

Add comment...

**serospartners**   •••





Liked by **serospartners** and **others**

**serospartners** Welcome **@tylen.riley** to Seros Partners... more

13 minutes ago

# EXHIBIT 4



363 W. Big Beaver Road, #410
Troy, MI 48084
248-833-6225

Gary K. August
gaugust@august-law.com

April 24, 2026

*Via Email and U.S. Mail*
*Christian@serospartners.com*

Christian Vaughn-Dawkins (CEO)
3365 Piedmont Road, NE
Atlanta, GA 30305

>   **Re:** **Demand for Documents and Payment Related to Tylen Riley**
>   **Superior Sports Mutual Non-Disclosure Agreement**

Dear Mr. Vaughn-Dawkins:

I am legal counsel for Superior Sports, LLC ("Superior"). I have been retained for the purpose of seeking and obtaining monetary damages from Seros Partners ("Seros") for Seros's breach of the February 13, 2026, Mutual Non-Disclosure Agreement between Superior and Seros ("Agreement"). The Agreement was signed for the purpose of allowing Seros full access to Superior's financial records and client lists so Seros could analyze the information and submit an offer to purchase Superior.

At the time the Agreement was entered into between Superior and Seros, Tylen Riley was a client of Superior under a March 19, 2025, contract, as amended on August 4, 2025. The term of Tylen Riley's contract with Superior ran through the expiration of Tylen Riley's college eligibility or the contract's termination. Tylen Riley was included on Superior's client list shared with Seros, and a copy Tylen Riley's contract with Superior was even provided to Seros. This made Tylen Riley a current client of Superior who was under an active representation agreement on February 13, 2026, when the Agreement was signed.

Mr. Vaughn-Dawkins
April 24, 2026
Page 2

Negotiations between Seros and Superior concluded when Seros would not make a reasonable offer which adequately valued Superior. During those discussions Superior advised Seros that the value of the Tylen Riley contract alone was more than what Seros was offering for Superior. Seros then went about taking from Superior what it could not buy.

Not coincidentally, on February 24, 2026, Tylen Riley terminated his contract with Superior with 30 days' notice. Thereafter, Tylen Riley presumably signed a retention agreement with Seros as Seros later publicly announced him as a client in marketing materials and publicly stated that it negotiated an agreement for Tylen Riley's signing with the University of Cincinnati.

The Agreement is clear that Seros was precluded from representing Tylen Riley who was under active representation of Superior on the February 13, 2026, the effective date of the Agreement as follows:

**3. Non-Solicitation of Current Clients**

- Not to solicit, contract, represent, or attempt to represent current clients of the other party who are under active representation agreements, without prior written consent;
- Not to interfere with, circumvent, or undermine existing client relationships of the other Party;
- Not to use Confidential Information to directly or indirectly compete with, or diminish the business of, the other Party with respect to current clients.

For purposes of this Agreement, "current clients" means any athlete or player who has executed a written representation agreement with a Party that is currently in effect. This non-solicitation provision does NOT apply to prospects, pipeline players, or athletes who have not yet signed representation agreements with either Party.

It is undisputed that Seros violated Section 3 of the Agreement by contracting with and representing Tylen Riley within one (1) year of the effective date of the Agreement (February 13, 2026). Seros also interfered with a client relationship which existed on the effective date, and it used the confidential information Superior provided to Seros (Tylen Riley's contract with Superior) to directly compete with Superior. Superior is not privy to all the machinations of how Tylen Riley ended up as a Seros client, but that is irrelevant. Seros was precluded from contracting with or representing Tylen Riley within one (1) year of the Agreement's effective date for any reason.

Since Superior lost out on the ability to represent Tylen Riley for the 2026-2027 collegiate year, it has suffered damages. Superior and Seros agreed in Section 8 of the Agreement that in the event of a breach of Section 3 of the Agreement that the breaching party would owe the other party three times (3x) the gross revenue or compensation

Mr. Vaughn-Dawkins
April 24, 2026
Page 3

earned by the breaching party from such violation, recognizing that actual damages would be difficult to ascertain.

The Agreement in Section 9 also gives Superior the right to audit the books and records of the breaching party solely as necessary to verify compliance with Section 3 and Section 4 of the Agreement. Finally, the prevailing Party is entitled to recover reasonable attorneys fees and costs.

Thus, this letter is a demand for audit under Section 9 of the Agreement. Please provide within seven (7) days all Seros's books and records related to both Tylen Riley and any other clients of Superior (as of February 13, 2026, the effective date), including, but not limited to:

1.    All communications and records of communications (emails, texts, letters, phone records) between Seros and any of Superior's clients (including, but not limited to, Tylen Riley), their family members, or representatives;

2.    All agreements between Seros and any of Superior's clients (including, but not limited to, Tylen Riley);

3.    All communications between Seros and any college made in an effort to negotiate an NIL deal for any of Superior's clients (including, but not limited to Tylen Riley), and this includes all communications (emails, texts, letters, phone records) with the University of Cincinnati with respect to Tylen Riley.

4.    Record of all compensation paid by Seros, contractually to be paid by Seros, received by Seros, or contractually to be received by Seros with respect in any way to Superior's clients, including, but not limited to, Tylen Riley.

Once these records are produced, Superior can calculate the treble damages owing to it and we can negotiate exactly when payment will be made by Seros to Superior. Superior will also expect at that time for Seros to pay my fees, which hopefully can be kept to a minimum by Seros's compliance.

You are also on notice to retain all records sought in this letter and those that in any way relate to Superior or its clients. Your destruction of records or your failure to retain such records will be deemed spoliation of evidence and expose you to adverse evidentiary findings.

Mr. Vaughn-Dawkins
April 24, 2026
Page 4

Very truly yours,

AUGUST LAW, PLLC

Gary K. August

# EXHIBIT 5

# LIMITED LIABILITY COMPANY ANNUAL REPORT

1/6/2022

NAME OF LIMITED LIABILITY COMPANY:   **Seros Enterprises LLC**

SECRETARY OF STATE ID NUMBER: 2749154          STATE OF FORMATION:  NC

REPORT FOR THE CALENDAR YEAR:   2026

| Filing Office Use Only |
| --- |
| E - Filed Annual Report |
| 2749154 |
| CA202611001350 |
| 4/20/2026 10:03 |
| ☐ Changes |

## SECTION A: REGISTERED AGENT'S INFORMATION

**1.** NAME OF REGISTERED AGENT:   Jonah Baize

**2.** SIGNATURE OF THE NEW REGISTERED AGENT:

SIGNATURE CONSTITUTES CONSENT TO THE APPOINTMENT

**3.** REGISTERED AGENT OFFICE STREET ADDRESS & COUNTY      **4.** REGISTERED AGENT OFFICE MAILING ADDRESS

270 Car Farm Rd, Ste 200                                270 Car Farm Rd, Ste 200

Lincolnton, NC 28092-7105 Lincoln County             Lincolnton, NC 28092-7105

## SECTION B: PRINCIPAL OFFICE INFORMATION

**1.** DESCRIPTION OF NATURE OF BUSINESS:   Sports agency

**2.** PRINCIPAL OFFICE PHONE NUMBER:   (704) 909-0709      **3.** PRINCIPAL OFFICE EMAIL: Privacy Redaction

**4.** PRINCIPAL OFFICE STREET ADDRESS                    **5.** PRINCIPAL OFFICE MAILING ADDRESS

270 Car Farm Rd, Ste 200                                270 Car Farm Rd, Ste 200

Lincolnton, NC 28092-7105                               Lincolnton, NC 28092-7105

**6. Select one of the following if applicable. (Optional see instructions)**

☐ The company is a veteran-owned small business

☐ The company is a service-disabled veteran-owned small business

## SECTION C: COMPANY OFFICIALS (Enter additional company officials in Section E.)

| NAME: Jonah Baize | NAME: | NAME: |
| --- | --- | --- |
| TITLE: Member | TITLE: | TITLE: |
| ADDRESS: | ADDRESS: | ADDRESS: |
| 270 Car Farm Rd, Ste 200 | | |
| Lincolnton, NC 28092 | | |

## SECTION D: CERTIFICATION OF ANNUAL REPORT. Section D must be completed in its entirety by a person/business entity.

Jonah Baize                                      4/20/2026

SIGNATURE                                         DATE

Form must be signed by a Company Official listed under Section C of This form.

Jonah Baize                                      Member

Print or Type Name of Company Official            Print or Type Title of Company Official

**This Annual Report has been filed electronically.**

MAIL TO: Secretary of State, Business Registration Division, Post Office Box 29525, Raleigh, NC 27626-0525