**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SUPERIOR SPORTS, LLC,
an Arkansas Limited Liability
Company,

                Plaintiff,

       vs.

SEROS ENTERPRISES, LLC,
a North Carolina Limited Liability
Company,

                Defendant.

_____/

Case No. 2:26-cv-11510-MFL-APP
Hon. Matthew F. Leitman

**MOTION TO DISMISS AMENDED COMPLAINT OR, *IN THE ALTERNATIVE*, TRANSFER CASE TO WESTERN DISTRICT OF NORTH CAROLINA**

Pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6) and L.R. 7.1, Defendant Seros Enterprises, LLC ("Seros") respectfully moves for an order dismissing the Amended Complaint. As set out in the accompanying memorandum and supporting declaration, Seros requests dismissal for lack of personal jurisdiction and improper venue and—in the event the action is not dismissed pursuant to Rules 12(b)(2) and (3)—failure to state a claim as it relates to Plaintiff's claims for fraud and tortious interference.  If the Court determines transfer is an appropriate alternative to dismissal pursuant to Rules 12(b)(2) and (3), Seros requests, for the reasons set out

in full in the accompanying memorandum, that the action be transferred to the Western District of North Carolina pursuant to 28 U.S.C. § 1406.

Pursuant to Local Rule 7.1, concurrence was sought on June 26, 2026 and not obtained, thereby requiring this motion.

Dated: June 26, 2026.

/s/ Aaron V. Burrell
Aaron V. Burrell (P73708)
Davina A. Bridges (P85597)
**DICKSON WRIGHT PLLC**
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500 (Telephone)
aburrell@dickinsonwright.com
dbridges@dicksonwright.com

Shayla J. Wright (*admission forthcoming*)
**PARKER POE ADAMS & BERNSTEIN LLP**
1075 Peachtree Street, N.E., Suite 1500
Atlanta, Georgia 30309
(678) 690-5750 (Telephone)
shaylawright@parkerpoe.com

Andrew P. Tabeling (*admission forthcoming*)
**PARKER POE ADAMS & BERNSTEIN LLP**
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27601
(919) 828-0564 (Telephone)
andytabeling@parkerpoe.com

*Attorneys for Defendant Seros Enterprises, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2026, I electronically filed the foregoing **MOTION TO DISMISS AMENDED COMPLAINT OR,** *IN THE ALTERNATIVE***, TRANSFER CASE TO WESTERN DISTRICT OF NORTH CAROLINA** with the Clerk of the Court using the ECF electronic filing system, which will send notification of such filing to all parties of record.

*/s/ Aaron V. Burrell*
Aaron V. Burrell (P73708)
**DICKSON WRIGHT PLLC**
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500 (Telephone)
aburrell@dickinsonwright.com

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**


SUPERIOR SPORTS, LLC,
an Arkansas Limited Liability
Company,

                Plaintiff,

     vs.

SEROS ENTERPRISES, LLC,
a North Carolina Limited Liability
Company,

                Defendant.

_____/

Case No. 2:26-cv-11510-MFL-APP
Hon. Matthew F. Leitman


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS AMENDED COMPLAINT OR, _IN THE
ALTERNATIVE_, TRANSFER CASE TO WESTERN DISTRICT OF NORTH
CAROLINA**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................. ii

FACTUAL BACKGROUND .................................................................................1

ARGUMENT ........................................................................................................4

I.      This Court lacks personal jurisdiction over Defendant. ..................................4

      A.      General Personal Jurisdiction.................................................................5

      B.      Specific Personal Jurisdiction ................................................................7

            i.      Lack of Purposeful Availment ......................................................8

            ii.     None of the Alleged Actions Occurred in Michigan ................10

            iii.    The Court's Exercise of Jurisdiction is Unreasonable..............12

II.     Defendant Neither Resides in this Venue and None of the Substantial Events Are Alleged to Have Occurred in this Venue.....................................14

III.    If Not Dismissed Pursuant to Rules 12(b)(2) and (3), This Case Should Be Transferred to the Western District of North Carolina............................16

IV.     Plaintiff Fails to State a Claim for Fraud and Tortious Interference ..............17

      A.      North Carolina Law Governs Plaintiff's Tort Claims .........................18

      B.      Plaintiff's fraud claim is ripe with conclusory statements..................20

            i.      Plaintiff's Claims Were Not Pled with Reasonable Particularity...............................................................................21

            ii.     Broken Promise.........................................................................23

      C.      Plaintiff's tortious interference claim fails to allege Defendant was even involved with Riley's decision to terminate his contract with Plaintiff. ..............................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AlixPartners, LLP v. Brewington,*
133 F.Supp.3d 947 (E.D. Mich. 2015) ...............................................................10

*Anwar v. Dow Chem. Co.,*
876 F.3d 841 (6th Cir. 2017) ...............................................................................4

*Barton v. Neely,*
No. 23-10051, 2023 WL 8039408 (E.D. Mich. Nov. 20, 2023) ........................25

*BDD Grp., LLC v. Crave Franchising, LLC,*
749 F.Supp.3d 852 (E.D. Mich. 2024) ........................................................5, 7, 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 545 (2007)....................................................................................23

*Blackward Props., LLC v. Bank of Am,*
476 Fed. App'x. 639 (2012)................................................................................20

*Britt v. Britt,*
320 N.C. 573 (1987) ...........................................................................................22

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985).............................................................................................9

*Calphalon Corp. v. Rowlette,*
228 F.3d 718 (6th Cir. 2000) ...............................................................................8

*Citibank USA, N.A. v. Ragsdale,*
No. 4:06-CV-00071-FL, 2009 WL 10705209 (E.D.N.C. Jan. 30,
2009) ...................................................................................................................18

*Cunningham v. MEC Enters., Inc.,*
No. 10–13409, 2011 WL 1869911 (E.D. Mich. Apr. 20, 2011) ........................15

*Cutter v. Vojnovic,*
388 N.C. 1 (2025) ...............................................................................................23

ii

*Derderian v. Genesys Health Care Sys.*,
  263 Mich.App. 364 (2004) ............................................................................25

*Great Am. Emu Co., LLC v. E.J. McKernan Co.*,
  509 F.Supp.3d. 528 (E.D.N.C. 2020) ........................................................20, 22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)......................................................................................9

*Hi-Way Motor Co. v. Int'l Harvester Co.*,
  398 Mich. 330 (1976) .................................................................................20

*Intera Corp. v. Henderson*,
  428 F.3d 605 (6th Cir. 2005) ......................................................................13

*Johnson v. Doodson Ins. Brokerage of Texas, LLC*,
  1 F.Supp.3d 776 (E.D. Mich. 2014) .........................................................18, 19

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
  106 F.3d 147 (6th Cir. 1997) ........................................................................9

*Live Cryo, LLC v. CryoUSA Import & Sales, LLC*,
  No. 17-CV-11888, 2017 WL 4098853 (E.D. Mich. Sept. 15, 2017) ................17

*Magna Powertrain De Mexico S.A. De C.V. v. Memonetive
  Performance Materials USA LLC*,
  192 F.Supp.3d 824 (E.D. Mich. 2016) ..........................................................4

*Mayslak v. Jensen*,
  No. 14-cv-11882, 2015 WL 5460645 (E.D. Mich. Aug. 12, 2015) ..................15

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*,
  130 F.4th 91 (4th Cir. 2025) .......................................................................21

*Neogen Corp. v. Neo Gen Screening, Inc.*,
  282 F.3d 883 (6th Cir. 2002) ........................................................................5

*Norman v. Tradewinds Airlines, Inc.*,
  286 F.Supp.2d 575 (M.D.N.C. 2003) ............................................................22

*Novotny v. Chapman*,
  No. 05-72158, 2005 WL 1981344 (E.D. Mich. Aug. 15, 2005) ......................16

*Painter's Mille Grille, LLC v. Brown*,
    716 F.3d 342 (4th Cir. 2016) ................................................................24

*Peters Broadcast Eng'g, Inc. v. 24 Capital, LLC*,
    40 F.4th 432 (6th Cir. 2022) ................................................................4

*Quick v. Get Air High Point LLC*,
    No. 1:24-CV-754, 2024 WL 5236922 (M.D.N.C. Nov. 14, 2024) ....................17

*S. Mach. Co. v. Mohasco Indus., Inc.*,
    401 F.2d 374 (6th Cir. 1968) ................................................................10

*Salom Enters., LLC v. TS Trim Indus., Inc.*,
    464 F.Supp.2d 676 (E.D. Mich. 2006) ..............................................6, 7

*SciGrip, Inc. v. Osae*,
    373 N.C. 409 (2020) ............................................................................19

*SRS Techs., LLC v. Nat. Minority Trucking Ass'n, Inc.*,
    No. 17-13207, 2018 WL 925847 (E.D. Mich. Feb. 16, 2018) ....................9

*Sullivan v. LG Chem., Ltd.*,
    79 F.4th 651 (6th Cir. 2023) ..........................................................9, 11

*Sutherland v. Kennington Truck Serv., Ltd.*,
    454 Mich. 274 (1997) ..........................................................................18

*Theunissen v. Matthews*,
    935 F.2d 1454 (6th Cir. 1991) ..............................................................4

*Touch-n-Buy, L.P. v. Girocheck Fin., Inc.*,
    No. 15-10863, 2016 WL 2957930 (E.D. Mich. May 23, 2016) ....................17

*TradeWinds Airlines, Inc. v. C-S Aviation Servs.*,
    222 N.C. App. 834 (2012) ....................................................................21

*United Labs., Inc. v. Kuykendall*,
    322 N.C. 643 (1998) ............................................................................23

*United Wholesale Mortg., LLC v. Am's Moneyline, Inc.*,
    647 F.Supp.3d 587 (E.D. Mich. 2022) ................................................20

iv

*Walden v. Fiore*,
    571 U.S. 277 (2014)..............................................................................12

*Yates Indus. S., LLC v. Edison Chouest Offshore, Inc.*,
    No. 25-10339, 2025 WL 2737444 (E.D. Mich. Sept. 25, 2025) .................*passim*

**Statutes**

28 U.S.C. § 1391(b) ........................................................................14, 17

28 U.S.C. § 1391(b)(1)..........................................................................5

28 U.S.C. § 1391(b)(2)....................................................................15, 16

28 U.S.C. § 1391(b)(3)........................................................................16

28 U.S.C. § 1391(c)(1)........................................................................14

28 U.S.C. § 1391(c)(2)........................................................................15

28 U.S.C. § 1406(a) ...........................................................................16

28 U.S.C. § 1631 ...............................................................................17

Mich. Comp. Laws § 600.745..................................................................5

## FACTUAL BACKGROUND

This is a dispute between two sports agencies, each based far away from Michigan. Plaintiff Superior Sports, LLC ("Superior") is an Arkansas limited liability company ("LLC") with a principal place of business in Jonesboro, Arkansas. (Am. Compl., ECF No. 4, ¶ 1.) Superior has two members: Mitchell August and Corey Barker. (*Id.*). Both are citizens of Arizona. ((*Id.*).

Defendant Seros Enterprises, LLC is a North Carolina LLC with a principal place of business in Lincolnton, North Carolina. (*Id.* at ¶ 2; Declaration of Christian Vaughn-Dawkins, (Dawkins Dec.) attached hereto as Ex. A, ¶ 2.) The Amended Complaint describes in North Carolina Secretary of State filings how both Defendant's member and its registered agent are both citizens of North Carolina. (Am. Compl. ¶ 2.)

The Amended Complaint recounts a business deal that did not work out. Both Plaintiff and Seros are sports agencies who "negotiate[] with NCAA schools and collectives to obtain Name Image and Likeness ('NIL') agreements for [their] clients." (*Id.* at ¶¶ 8–9.) They explored joining forces as Defendant contemplated an acquisition of Plaintiff. (*Id.* at ¶¶11-12.) In connection with potential negotiations for the sale, Plaintiff and Seros "entered into a Mutual Non-Disclosure Agreement" (the "NDA") in February 2026. (*Id.* at ¶ 10.)

1

Notably, the NDA was not negotiated, drafted, or signed in Michigan. (Dawkins Dec., ¶ 8.) At no time could Christian Vaughn-Dawkins, Defendant's Chief Executive Officer, recall any of Defendant's representative having contacts related to the NDA in Michigan nor communicating with anyone with Plaintiff who was in Michigan. (*Id.* at ¶¶ 7). Nonetheless, the NDA has a provision that states, "This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan without regard to conflict of law principles." (Am. Compl. Ex. 2, Sec. 11.)

The NDA also included a non-solicitation provision that did not allow Defendant to "solicit, contract, represent, or attempt to represent current clients of the other party who are under active representation agreements, without prior written consent," "interfere with, circumvent, or undermine existing client relationships of the other Party," or "use Confidential Information to directly or indirectly compete with, or diminish the business of, the other party with respect to current clients." (Am. Compl. ¶ 14, Ex. 2, Sec. 3.) Current clients, as defined in the NDA, refers to any athlete or player who has executed a written representation agreement with either Plaintiff or Defendant  that is currently in effect, not prospects, pipeline players, or athletes who have not yet signed representation agreements with either Plaintiff or Defendant. (*Id.*)

Plaintiff alleges that Tylen Riley, a collegiate student-athlete, was one of its current clients contemplated under the NDA. (Am. Compl. ¶ 19) Plaintiff had an agreement with Plaintiff "under a March 19, 2025, contract, as amended on August 4, 2025." (*Id.* at ¶ 16.) Plaintiff further alleges that Riley was one of the names provided to Seros during the diligence period, and states that "eleven days after Plaintiff and Defendant entered into the Agreement, Tylen Riley terminated his contract with Plaintiff with 30 days' notice." (*Id.* at ¶ ¶ 18, 22.) Plaintiff, however, does not allege any facts suggesting that Defendant was involved in Riley's decision to terminate his contract with Seros other than his eventual decision to sign with Defendant. Nor does Plaintiff allege that Riley did not have the right to terminate his contract with Plaintiff. (*See generally* Am. Compl.)

Still, Plaintiff alleges that after negotiations between Plaintiff and Seros fell through, [u]pon information and belief, Tylen Riley signed a retention agreement with Defendant. (*Id.* at ¶¶ 20, 23.) Plaintiff further alleges that Defendant later publicly announced Tylen Riley that Tylen signed with the University of Cincinnati and was a client of Defendant. (*Id.*)

Plaintiff now asserts three claims based on the failed acquisition: (1) breach of the NDA—namely, the non-solicitation audit and inspection provisions (Am. Compl. ¶¶ 24–37.); (2) fraudulent inducement to enter into the NDA "in order to obtain the Plaintiff's confidential information when Defendant had no intention of

complying with the Agreement" (*Id.* at ¶¶ 38–53.); and (3) tortious interference with a contract. Defendant moves to dismiss Plaintiff's claims for lack of personal jurisdiction and failure to state a claim as it relates to the fraud and tortious interference claims.

## ARGUMENT

### I.   This Court lacks personal jurisdiction over Defendant.

Plaintiff bears the burden of establishing this Court's personal jurisdiction over Defendant. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017). To satisfy this burden, Plaintiff must set forth specific facts demonstrating personal jurisdiction over Defendant. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If, however, a defendant challenges personal jurisdiction, as in here, the burden then shifts to back to Plaintiff:

> [A]fter the plaintiff makes a prima facie case for personal jurisdiction, which can be done merely through the complaint, the burden shifts to the defendant. The defendant's motion to dismiss must be supported by evidence. The burden then shifts back to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Peters Broadcast Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 437–38 (6th Cir. 2022) (internal citations and quotations omitted).

Under this framework, personal jurisdiction can be specific or general. *Magna Powertrain De Mexico S.A. De C.V. v. Memonetive Performance Materials USA LLC*, 192 F.Supp.3d 824, 828 (E.D. Mich. 2016). Neither applies here. Indeed, the

4

Amended Complaint advances two primary allegations to support a finding of personal jurisdiction in this Court: (1) Defendant entered into a NDA with Plaintiff that includes a Michigan choice of law provision; and (2) Defendant "conducts business" in Michigan. These allegations are not enough to justify a finding of personal jurisdiction—either specific or general.

### A.      General Personal Jurisdiction

Federal courts may exercise personal jurisdiction in a diversity case if such jurisdiction is authorized by the law of the state in which the court sits and is otherwise consistent with the Due Process Clause of the Fourteenth Amendment. *Yates Indus. S., LLC v. Edison Chouest Offshore, Inc.*, No. 25-10339, 2025 WL 2737444, at *3 (E.D. Mich. Sept. 25, 2025) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002)). Michigan's long-arm statute provides for "general" jurisdiction over corporations. It, however, is not automatic.

A Michigan court has general jurisdiction over a corporation if it is incorporated in Michigan, consents to jurisdiction pursuant to Mich. Comp. Laws § 600.745, or carries on a "continuous and systematic part of its general business" in Michigan. *Id*.; *BDD Grp., LLC v. Crave Franchising, LLC*, 749 F.Supp.3d 852, 858 (E.D. Mich. 2024) (finding that general personal jurisdiction exists when a "defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there").

5

Here, Plaintiff correctly asserts that Defendant is a North Carolina LLC with a principal office in Lincolnton, North Carolina. (Am. Compl. ¶ 2.) Plaintiff also correctly asserts that Defendant's registered agent is located in North Carolina. Despite these concessions, Plaintiff generically contends that personal jurisdiction is proper in this Court because Defendant "regularly conducts business" in Michigan and then proceeds to reference a third party affiliated with Defendant who has his own ties to the Western Michigan University, which sits in the Western District of Michigan—not the Eastern District where this case has been filed. But Plaintiff cannot hail Defendant into a Michigan court—hundreds of miles away from its home in North Carolina—based on a third party's connections to the state.

The general jurisdiction inquiry hinges on whether Defendant has its own continuous and systematic ties to Michigan. And based on the allegations in the Amended Complaint, Plaintiff has not alleged that Defendant has any continuous and systematic ties to the state of Michigan, let alone this Court.

This case is factually similar to *Salom Enters., LLC v. TS Trim Indus., Inc.*, 464 F.Supp.2d 676, 682 (E.D. Mich. 2006); *see also Yates*, 2025 WL 2737444, at *3. In *Salom,* the complaint alleged that the defendant conducted business with a leather supplier located in Michigan for the raw materials the plaintiff used to make leather armrests at its Mexico plant and guaranteed the plaintiff's account to the supplier. The complaint also alleged that the defendant negotiated with the plaintiff's

representatives in Michigan for the asset and inventory purchase. *Salom*, 464 F.Supp.2d at 682. But the Court found these contacts to be "isolated and occasional." *Id.* Further, the Court noted that there were no allegations that the defendant was physically present in the state, retained agents to represent it in the state, solicited sales or other business here on a regular basis, or derived any substantial revenue from business conducted in the state. The Court thus determined that the allegations in the complaint did not show that the defendant carried on continuous and systematic business in the state of Michigan. *Id.* The same is true here.

In fact, Defendant's alleged contacts here are even more attenuated than those in *Salom*. Defendant's representation of any third party who may have ties to Michigan is nothing more than an isolated and occasional contact, insufficient to establish continuous and systematic part of its general business. *Yates*, 2025 WL 2737444, at *3. Therefore, this Court does not have general personal jurisdiction over Defendant.

### B.   Specific Personal Jurisdiction

Plaintiff has alleged this Court has diversity subject matter jurisdiction. Thus, this Court may only exercise personal jurisdiction over a party "when such jurisdiction is both authorized by state law and permitted by the Due Process Clause of the Fourteenth Amendment." *BDD Grp.*, 749 F. Supp. 3d at 859. The analysis for the state law and Due Process Clause questions are usually separate, but they become

one under Michigan law because Michigan's long-arm statute extends to the limits imposed by federal constitutional due process requirements. *Id.* (citations and quotations omitted).

Consequently, the Court must ensure that the exercise of specific personal jurisdiction is proper under the due process clause—i.e., that each defendant "possessed such 'minimum contacts' with the forum state that exercising jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Id.*

The Sixth Circuit relies on a three pronged test to determine if minimum contacts exist between a defendant and forum state. *Id.* First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. *Id.* Second, the cause of action must arise from the defendant's activities there. *Id.* Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.*

Plaintiff has not—and cannot—assert any allegations to satisfy the minimum contacts test, and thus cannot support a finding of specific personal jurisdiction.

### i. Lack of Purposeful Availment

The Sixth Circuit views the purposeful availment requirement as "essential" to a finding of personal jurisdiction. *Yates,* 2025 WL 2737444, at *4; Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-22 (6th Cir. 2000). This requirement ensures

8

that a defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

To find purposeful availment, courts must look to whether a defendant has deliberately engaged in significant activities within a state or has created continuing obligations between himself and residents of the forum, such that he has "availed himself of the privilege of conducting business there and ... it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." *Id.* at 475-76. Courts may also consider whether a choice of law provision is included in the underlying agreement or contract. *Id.* at 482.

Plaintiff contends that there is personal jurisdiction because the NDA includes a Michigan choice of law provision. But Plaintiff's contention is unsupported by longstanding case law. An NDA itself does not create continuous and substantial consequences in Michigan. *SRS Techs., LLC v. Nat. Minority Trucking Ass'n, Inc.*, No. 17-13207, 2018 WL 925847, *4 (E.D. Mich. Feb. 16, 2018) (finding that a choice of law provision in a contract by itself is insufficient to confer personal jurisdiction); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997); *contrast Sullivan v. LG Chem., Ltd.,* 79 F.4th 651 (6th Cir. 2023) (governing

9

contract had a Michigan choice of law provision and Michigan forum selection clause.

Here, the NDA was intended to maintain confidentiality of Plaintiff and a potential acquisition of Plaintiff's business, which is located in Arkansas, not Michigan. Thus, neither the subject matter of the NDA nor the performance of the NDA relates to Michigan. And it is also worth noting that the NDA was not negotiated or signed in Michigan. Dawkins Dec. ¶ 8.

Further, Plaintiff's blanket assertion that Defendant conducts business in Michigan without specifics about what that alleged business is, or allegations that attempt to show Defendant has ties to Michigan through its third party clients, is also fatal. Recognizing that any connection between Defendant and Michigan is attenuated at best, Defendant did not purposefully itself of the privilege of doing business in Michigan. *Yates,* 2025 WL 2737444, at *4.

### ii.    None of the Alleged Actions Occurred in Michigan

Even if Plaintiff could satisfy the purposeful availment prong—which it cannot—the harm that forms the basis of Plaintiff's lawsuit is not directly related to Defendant's transaction of business in Michigan. *AlixPartners, LLP v. Brewington*, 133 F.Supp.3d 947, 959 (E.D. Mich. 2015). The key requirement is that "the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 384 n.27 (6th

10

Cir. 1968). "Only when the operative facts of the controversy are not related to the defendant's conduct with the state can it be said that the cause of action does not arise from that contract." *Id.* at 384 n.29. And that is exactly the case here.

None of Plaintiff's conclusory allegations identifies any act—related to the NDA or any of the alleged claims—by Defendant within Michigan or directed at Michigan. (*See, e.g.,* Am. Compl., ¶¶ 10, 11, 17.) Even worse, the Amended Complaint does not contain any allegations that describe *any* conduct in Michigan related to the dispute. It does not, for example, allege any negotiations relating to the NDA took place in Michigan or that the purported solicitation at issue occurred in Michigan. It does not allege any contact with an individual or entity involved in this dispute, including Plaintiff or Riley, occurred in Michigan. After all, Plaintiff is an Arkansas company with a principal place of business there, and both of Plaintiff's members are Arizona citizens. (*Id.* at ¶ 1.) Riley has never played at a Michigan college or university. (Dawkins Dec. ¶ 10.)

Instead, Plaintiff, in the Amended Complaint, broadly alleges that Defendant "conducts business" in Michigan. (Am. Compl., ¶ 5.) Blanket assertions that Defendant generally "conducts business" in Michigan does not link any specific conduct or activity to the alleged claims. Similarly, Plaintiff's allegations that Defendant has other connections with other current and former collegiate student-athletes who have ties in Michigan school are also completely unrelated to this

11

dispute. To support personal jurisdiction, Defendant's "business" must "arise out of or relate to" the claims in the Amended Complaint. *See Sullivan*, 79 F.4th at 661. And it does not.

Put simply, it is not enough for Plaintiff to list a few of Defendant's miscellaneous connections to the state that are not relevant or pertinent to the alleged claims. For purposes of proving sufficient minimum contacts, it is paramount to demonstrate the specific claims at issue—breach of contract, fraud, and tortious interference—arise from Defendant's connections and activity in Michigan. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (explaining that the specific-jurisdiction inquiry focuses on "the relationship among the defendant, the forum, and the litigation."). Plaintiff cannot carry that burden here.

### iii.    The Court's Exercise of Jurisdiction is Unreasonable

Plaintiff failed to satisfy the first and second factors of the minimum contacts test. But even if it was able to prove those first two factors, Plaintiff would still not be able to demonstrate minimum contacts because the exercise of personal jurisdiction over Defendant is not reasonable. This reasonableness requirement "correspond[s] with the Supreme Court's requirement that the exercise of personal jurisdiction 'comport[s] with traditional notions of fair play and substantial justice.'" *Yates*, 2025 WL 2737444, at *7.

"[W]hen considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005). Taken together, these factors weight against a reasonableness finding.

Defendant faces a great burden of litigation here in Michigan, when all its operations are in a state far away. *Yates*, 2025 WL 2737444, at *7 ("[T]he burden on Defendants is great where they have to litigate in a forum in which they have had little contact while the work that is the subject of the dispute (and where most discovery is likely to be heavily involved), is in an entirely different jurisdiction, quite distant from the forum.")

Moreover, Michigan has little interest in litigation involving two non-residents, especially compared to the interests of North Carolina, where Defendant is based. *Id*. ("Michigan has little interest in the present dispute, given that the repairs that are the subject of the dispute took place in Alabama and no part of the contract was performed in Michigan."). Most of the discovery at issue in this case will necessarily involve either Arkansas or North Carolina witnesses, not Michigan

13

witnesses. And, finally, not even the Michigan choice of law provision would make it reasonable to hale Defendant into Court here. *See Intera Corp.*, 428 F.3d at 618.

For these reasons, the exercise of specific personal jurisdiction would not be reasonable. *See id.* at 619 (holding no personal jurisdiction in a Tennessee court even where Plaintiff was a Tennessee corporation, because no conduct allegedly occurred there and defendants were North Carolina residents).

Accordingly, because Plaintiff fails to establish either general or specific personal jurisdiction, the Amended Complaint must be dismissed.

## II. Defendant Does Not Reside in this Venue and None of the Substantial Events Are Alleged to Have Occurred in this Venue.

For similar reasons, venue is also improper and dismissal is proper under Fed. R. Civ. P. 12(b)(3), which mandates dismissal for improper venue.

Federal law establishes that a party may bring a civil action in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

14

For purposes of this statute, "a natural person … shall be deemed to reside in the judicial district in which that person is domiciled." *Id.* § 1391(c)(1).  For "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).

"On a motion to dismiss for improper venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper." *Cunningham v. MEC Enters., Inc.*, No. 10–13409, 2011 WL 1869911, at *1 (E.D. Mich. Apr. 20, 2011). In evaluating a 12(b)(3) motion the Court, "may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Mayslak v. Jensen*, No. 14-cv-11882, 2015 WL 5460645, at *2 (E.D. Mich. Aug. 12, 2015).

The record before this Court demonstrates Plaintiff cannot meet its burden of establishing proper venue. First, Section 1391(b)(1) cannot be satisfied because Defendant, as the sole defendant, does not reside in Michigan. As Section 1391(c)(2) clarifies, Defendnat resides in this District if it is subject to personal jurisdiction here. As explained above, however, Michigan does not have personal jurisdiction over Defendant in this action.

15

Second, Section 1391(b)(2) does not apply. Venue could be proper here a substantial part of the events or omissions took place in this District but the Amended Complaint does not establish any event that took place in this District, or even Michigan at all. And the fact that Defendant may represent a student athlete enrolled at Western Michigan University. (Am. Compl., ¶ 6, Exhibit 1.) is fatal not only because that representation does not give rise the "event[] or omission[] giving rise to the claim[s]" of this case, but also because Western Michigan University does not sit in this District. *See* 28 U.S.C. § 1391(b)(2).

Third, Section 1391(b)(3) is not a proper basis for venue because venue would need to be where the defendant "is subject to the court's personal jurisdiction with respect to the action." *See id.* § 1391(b)(3). As explained above, no Michigan court has personal jurisdiction over Defendant with respect to the allegations constituting this action.

For this reason, dismissal for improper venue is also required. *See Novotny v. Chapman*, No. 05-72158, 2005 WL 1981344, at *2 (E.D. Mich. Aug. 15, 2005) If Not Dismissed Pursuant to Rules 12(b)(2) and (3), This Case Should Be Transferred to the Western District of North Carolina.

When a case, as here, has been brought "in the wrong division or district," a court may also transfer the matter to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Courts may also transfer cases to districts where

16

it could have been brought "at the time it was filed" when they lack personal jurisdiction over the defendant. *See* 28 U.S.C. § 1631. Here, the record demonstrates only one District where this matter may be brought: the Western District of North Carolina. The Western District of North Carolina is the only District where Defendant both resides and where the Court can infer a substantial part of the events or omissions giving rise to the Amended Complaint occurred, given Defendant's office in Lincolnton, North Carolina. *See* 28 U.S.C. § 1391(b). Under those circumstances, transfer to the Western District of North Carolina is the only proper alternative to dismissal.

## III.    Plaintiff Fails to State a Claim for Fraud and Tortious Interference[1]

Plaintiff's tort claims are not necessarily governed by the Michigan choice of law provision in the NDA. The provision expressly states that the NDA "shall be governed by and construed in accordance with the laws of the state of Michigan without regard to conflict of law principles." (Am. Compl. Ex. 2, Sec. 11.). Consequently, the application of Michigan law is limited to the NDA itself.

---

[1] Defendant submits that the action should be dismissed pursuant to Rule 12(b)(2) and (3). However, if Court instead determines a transfer of this action is appropriate to the Western District of North Carolina, Defendant submits that court should rule on the merits of the 12(b)(6) arguments raised here in this memorandum. Alternatively, in the event that this Court determines neither 12(b)(2) or (b)(3) is appropriate, this Court should determine the merits of Defendant's 12(b)(6) arguments.

Thus, based on the plain language of the choice of law provision, the application of Michigan law is limited to the NDA itself. It does not extend to tort claims. *Live Cryo, LLC v. CryoUSA Import & Sales, LLC*, No. 17-CV-11888, 2017 WL 4098853, at *4 (E.D. Mich. Sept. 15, 2017); *Touch-n-Buy, L.P. v. Girocheck Fin., Inc.*, No. 15-10863, 2016 WL 2957930, at *2 (E.D. Mich. May 23, 2016); *Quick v. Get Air High Point LLC,* No. 1:24-CV-754, 2024 WL 5236922, at *2 (M.D.N.C. Nov. 14, 2024); *Citibank USA, N.A. v. Ragsdale*, No. 4:06-CV-00071-FL, 2009 WL 10705209, at *18 n.16 (E.D.N.C. Jan. 30, 2009).

Accordingly, our analysis turns to which laws govern Plaintiff's tort claims.

## A.      North Carolina Law Governs Plaintiff's Tort Claims

Michigan, the forum where this case currently exists, and North Carolina, the only proper federal forum state for this dispute, have different choice of law rules.

Michigan courts apply Michigan law absent a "rational reason" to do otherwise exists. *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286 (1997). To determine if a rational reason exists, the court first determines "if any foreign state has an interest in having its law applied." *Id.* If a state does have such an interest, the court then determines "if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.* Given that neither party resides in Michigan and no conduct in the litigation allegedly occurred there, Michigan courts hold that the state where the injury was sustained (namely, the state where the last

18

act necessary to create liability), has a great interest, while Michigan does not. *Johnson v. Doodson Ins. Brokerage of Texas, LLC*, 1 F.Supp.3d 776, 784 (E.D. Mich. 2014).

North Carolina choice of law rules for tort claims reach the same "last act" inquiry. For torts and tort-like claims, North Carolina uses the *lex loci* test which, for tort and tort-like claims, looks to "the state where the injury or harm was sustained or suffered," which is "ordinarily, the state where the last event necessary to make the actor liable or the last event required to constitute the tort takes place." *SciGrip, Inc. v. Osae*, 373 N.C. 409, 420–22 (2020) (quotations omitted).

While the Amended Complaint offers virtually no information about where any acts constituting this dispute took place, it alleges that Defendant is organized and operating in North Carolina. (Am. Compl. ¶ ¶ 2-3.). Thus, the only reasonable inference is the "last event necessary" to make Defendant liable was allegedly committed in North Carolina, making North Carolina the appropriate choice of law to analyze Plaintiff's tort claims. Michigan and North Carolina choice of law rules compel this conclusion.

Michigan has little interest in applying its own law where no acts constituting the dispute are alleged to have occurred in the state of Michigan. And where it lacks such an interest, Michigan looks to where the last act occurred. *See Johnson*, 1 F.Supp.3d at 784. Similarly, under North Carolina's choice-of law approach, the

19

result is the same. For tort claims, North Carolina law focuses on where the last event necessary allegedly took place to make a defendant liable. We can only infer that the last event giving rise to Plaintiff's claims allegedly took place in North Carolia based on the Amended Complaint. Thus, under either state's approach, North Carolina law controls.

### B. Plaintiff's fraud claim is ripe with conclusory statements.

As an initial matter, the failure to plead the particulars of the alleged fraud is likely because Plaintiff's claim is merely an attempt to recast a contract claim as a fraud claim, which North Carolina law does not allow. Like the contract claim, it is based on Defendant signing Riley after entering into the NDA. But, that would render the fraud claim and the contract claim identical.

Plaintiff seems to try to save their claim by alleging an inducement theory instead: asserting that the NDA was "ruse to gain access to Plaintiff's confidential information so it could raid Plaintiff's clients and steal its business." (Am. Compl., ¶ 46.) The only plausible, factual allegation Plaintiff could possibly rely upon to allege fraud is that Defendant allegedly subsequently breached its contract. Yet, where the only allegation supporting an alleged fraudulent intent is a mere breach of

20

the contract, North Carolina law compels dismissal.[2] *Great Am. Emu Co.*, 509 F.Supp.3d at 528.

To successfully prove fraud [in the inducement], Plaintiff must allege a (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *TradeWinds Airlines, Inc. v. C-S Aviation Servs.*, 222 N.C. App. 834, 840 (2012). Plaintiff has not successfully pled these elements, and even more, there are additional guardrails that directly impact how these claims must be pled. Indeed, fraud claims must be plead with reasonable particularity and they cannot made solely premised on a broken promise.

### i.    Plaintiff's Claims Were Not Pled with Particularity

Fed. R. Civ. P. 9(b) provides that "a party must state with particularity the circumstances constituting fraud or mistake" when alleging fraud or mistake. Typically, this means that a plaintiff must allege the time, place, and content of the false statement, as well as the resulting injury. *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 106 (4th Cir. 2025).

---

[2] Michigan law holds the same. Dismissal of a fraud claim at the Rule 12 stage is appropriate where a plaintiff attempts to use a subsequent broken promise to establish the required bad faith. *United Wholesale Mortg., LLC v. Am's Moneyline, Inc.*, 647 F.Supp.3d 587, 599 (E.D. Mich. 2022); *see also Blackward Props., LLC v. Bank of Am*, 476 Fed. App'x. 639, 643 (2012)

21

Based on this framework, Plaintiff's fraud claim should be dismissed because it fails to satisfy the basic pleading requirements under Rule 9(b). The Amended Complaint says nothing about any speaker of the alleged fraudulent statements or when those statements occurred. Even worse, the Amended Complaint is silent as to what the actual fraudulent statements themselves were. This plainly fails the basic "time, place and content" pleading requirements in Rule 9(b).

Further, the Amended Complaint does not describe, let alone, identify any specific conduct that suggests that Defendant did not intend to comply with the terms of the NDA when Defendant entered into it. Nevertheless, Plaintiff claims that because Defendant eventually signed Riley, it somehow demonstrates that it meant at the time Defendant signed the NDA, Defendant did not intend to comply with it. (*Id.* at ¶ 46.)

Moreover, Plaintiff does not allege any damages resulted from any alleged fraudulent statement. There is absolutely nothing connecting Plaintiff's damage— loss of a client—to the alleged fraud. Plaintiff does not allege that Defendant used any information it purportedly obtained from Plaintiff in order to sign Riley. This failure to plead resulting damages that "proximately flow from the fraud" is a separate basis to dismiss Plaintiff's fraud claim. *Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F.Supp.2d 471, 478 (E.D.N.C. 2013); *SFS Check, LLC v. First Bank of Del.*, 990 F.Supp.2d 762, 780 (E.D. Mich. 2013)

(dismissing fraud claim where, *inter alia*, there was no allegation about "how [defendant's] alleged misrepresentation … caused any of [p]laintiff's alleged damages"). But the Amended Complaint is silent as to this element. This does not satisfy the reasonable particularity standard, or even more broader pleading standards. Plaintiff's claim must fail.

### ii. Alleged Broken Promises Do Not Rise to the Level of Fraud

Additionally, Plaintiff's fraud claims cannot be based on Defendant's alleged unfulfilled promises. *Norman v. Tradewinds Airlines, Inc.*, 286 F.Supp.2d 575, 594 (M.D.N.C. 2003) ("the mere failure to carry out a promise in contract does not support a tort action for fraud"). Instead, "[a] failure to perform a promise can be a basis for fraud only where there is evidence the promissor had a 'specific intent' not to perform at the time a promise was made." *Id.* This requires the plaintiff to "allege[] facts permitting a plausible inference that defendant knew the alleged promise was false at the time it was made, or intended to not honor the promise at the time it was made." *Great Am. Emu Co., LLC v. E.J. McKernan Co.*, 509 F.Supp.3d. 528, 539 (E.D.N.C. 2020); *see also Britt v. Britt*, 320 N.C. 573, 580 (1987) ("Mere proof of nonperformance is not sufficient to establish the necessary fraudulent intent."). Given the basic requirements of a fraud claim have not been met, dismissal is warranted as a matter of law.

23

**C.      Plaintiff's tortious interference claim fails to allege Defendant was even involved with Riley's decision to terminate his contract.**

"[Tortious] interference with a contract has five elements: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661 (1998).

But offering only "conclusory statements tracking the elements of" an alleged tortious interference claim is insufficient to survive a Rule 12 motion. *Cutter v. Vojnovic*, 388 N.C. 1, 9 (2025); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("[A] a formulaic recitation of a cause of action's elements will not do.").

Consequently, Plaintiff's claim for tortious interference with a contract should be dismissed because it only offers a bare recitation of some of the elements of the claim, which is not sufficient to state a claim. Indeed, the allegations for this claim contains even fewer facts than the fraud claim. Plaintiff pleads allegations supporting the existence of a contract between Plaintiff and Riley and that Defendant knew of the contract between Plaintiff and Riley, which Riley subsequently terminated, Am. Compl., ¶¶ 21, 55–56, but a necessary element—intentionality—is missing key facts.

24

There are no allegations describing any conduct about how Defendant purportedly intentionally induced Riley to terminate his contract with Plaintiff. The Amended Complaint is completely silent as to what specific actions Defendant took to cause Riley to terminate his contract with Plaintiff. In other words, Plaintiff's conclusory allegations that Defendant "intentionally and improperly instigated, caused, or induced" Riley to terminate his contract with Plaintiff without more is insufficient. (*Id.* at ¶ 57.) Claims, like this one, devoid of any plausible, factual support whatsoever effectively amount to a generic recitation of the elements of the claim. Plaintiff therefore cannot prevail on this tortious interferene claim just by repeating the elements of a tortious interference claim by simply repeating its elements. *See Painter's Mille Grille, LLC v. Brown*, 716 F.3d 342, 354 (4th Cir. 2016).[3] The tortious interference claim should therefore be dismissed.

Dated: June 26, 2026.

/s/ Aaron V. Burrell
Aaron V. Burrell (P73708)
Davina A. Bridges (P85597)
**DICKSON WRIGHT PLLC**
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500 (Telephone)
aburrell@dickinsonwright.com
*Attorneys for Defendant Seros Enterprises, LLC*

---

[3] Again, under Michigan law, the result would be the same. Dismissal of a tortious interference claim is appropriate where the complaint alleges neither a breach nor any instigation of a breach by the defendant. *E.g.*, *Barton v. Neely*, No. 23-10051, 2023 WL 8039408, at *7 (E.D. Mich. Nov. 20, 2023).

25

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2026, I electronically filed the above Motion to Dismiss or Transfer with the Clerk of the Court using the ECF electronic filing system, which will send notification of such filing to all parties of record.

> /s/ Aaron V. Burrell
> Aaron V. Burrell (P73708)
> **DICKSON WRIGHT PLLC**
> 500 Woodward Avenue, Suite 4000
> Detroit, MI 48226
> (313) 223-3500 (Telephone)
> aburrell@dickinsonwright.com

26